FILED

2025 May-07 PM 01:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **DUSTIN SHANE DECKER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:24-cv-00626-AMM** |
| | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| **Commissioner,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OF DECISION

Plaintiff Dustin Shane Decker brings this action pursuant to the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for a period of disability and disability insurance benefits ("benefits"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record, the court **AFFIRMS** the decision of the Commissioner.

## I.    Introduction

On May 13, 2022, Mr. Decker protectively filed an application for benefits under Title II of the Act, alleging disability as of July 15, 2020. R. 15, 59–66. Mr. Decker amended his alleged onset date to June 16, 2021. R. 15, 38. Mr. Decker alleges disability due to: hearing loss, lipoma, GERD, tinnitus, anxiety, diabetes, degenerative disc disease, PTSD, adjustment disorder, and depression. R. 60. He has

1

two years of college education and past relevant work experience as a flagger traffic, crane operator, forklift operator, and shipping clerk. R. 22, 26.

The Social Security Administration ("SSA") initially denied Mr. Decker's application on January 13, 2023, and again upon reconsideration on June 21, 2023. R. 15, 59–73. On June 26, 2023, Mr. Decker filed a request for a hearing before an Administrative Law Judge ("ALJ"). R. 15, 100. That request was granted. R. 129–31. Mr. Decker received a telephone hearing before ALJ Monica D. Jackson on October 17, 2023. R. 15, 32–58. On January 22, 2024, ALJ Jackson issued a decision, finding that Mr. Decker was not disabled from June 16, 2021, through his date of last insured, March 31, 2022. R. 15–27. Mr. Decker was forty-three years old at the time of the ALJ decision. R. 27, 60.

Mr. Decker appealed to the Appeals Council, which denied his request for review on March 15, 2024. R. 1–3. After the Appeals Council denied Mr. Decker's request for review, R. 1–3, the ALJ's decision became the final decision of the Commissioner and subject to district court review. On May 16, 2024, Mr. Decker, proceeding *pro se*, sought this court's review of the ALJ's decision. *See* Doc. 1.

## II.    The ALJ's Decision

The Act establishes a five-step test for the ALJ to determine disability. 20 C.F.R. § 404.1520. *First*, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work

activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done "for pay or profit." 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). *Second*, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c). Absent such impairment, the claimant may not claim disability. 20 C.F.R. § 404.1520(a)(4)(ii), (c). *Third*, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 404.1525, 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity, which refers to the claimant's ability to work despite his impairments. 20 C.F.R. §§ 404.1520(e), 404.1545. In the *fourth* step, the ALJ determines whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ determines that the claimant is capable of

performing past relevant work, then the claimant is deemed not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the *fifth* and final step. 20 C.F.R. § 404.1520(a)(4)(v). In this step, the ALJ must determine whether the claimant is able to perform any other work commensurate with his residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g)(1). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 404.1560(c).

The ALJ determined that Mr. Decker would meet the insured status requirements of the Act through March 31, 2022. R. 16, 18. Next, the ALJ found that Mr. Decker "did not engage in substantial gainful activity during the period from his alleged onset date of June 16, 2021[,] through his date last insured of March 31, 2022." R. 18. The ALJ decided that Mr. Decker had the following severe impairments: degenerative disc disease status post anterior cervical discectomy and fusion, major depressive disorder, generalized anxiety disorder, and posttraumatic stress disorder. R. 18. The ALJ decided that Mr. Decker had the following non-severe impairments: diabetes mellitus, tinnitus, mild sensorineural hearing loss, GERD, small hiatal hernia, and lipoma. R. 18. Overall, the ALJ determined that Mr.

Decker "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments" to support a finding of disability. R. 18.

The ALJ found that Mr. Decker "had the residual functional capacity to perform medium work" with certain limitations. R. 21. The ALJ determined that Mr. Decker could "understand, remember and carry out simple instructions and make simple work related decisions"; "work at a consistent pace throughout the workday but [not] perform specific production rate pace work such as assembly line work or work requiring hourly quotas"; "tolerate occasional interaction with coworkers, supervisors and the public"; and "tolerate occasional changes in work setting." R. 21.

The ALJ determined that Mr. Decker's past relevant work was that of a flagger traffic, crane operator, composite job forklift operator, and shipping clerk. R. 26. Based on the testimony of the vocational expert, the ALJ determined Mr. Decker "was capable of performing past relevant work as a flagger traffic." R. 26.

Based on these findings, the ALJ concluded that Mr. Decker was not under a disability as defined in the Act, from June 16, 2021, through March 31, 2022, the date of last insured. R. 27. Mr. Decker now challenges that decision.

**III. Standard of Review**

This court's role in reviewing claims brought under the Act is a narrow one. The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Walker v. Soc. Sec. Admin, Comm'r*, 987 F.3d 1333, 1338 (11th Cir. 2021); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Act mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *see* 42 U.S.C. § 405(g). This court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the record as a whole and determine if the decision "is reasonable and supported by substantial evidence." *See Martin*, 894 F.2d at 1529 (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quoting *Bloodsworth*, 703 F.2d at 1239). If the Commissioner's factual findings are supported by substantial evidence, they must be affirmed even if the preponderance of the evidence is against the Commissioner's findings. *Id*. No decision is automatic, for "[d]espite th[e] deferential standard [for review of claims], it is imperative that th[is] Court

scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

Because Mr. Decker is proceeding *pro se*, the court construes his complaint liberally. *See Curtis v. Comm'r of Soc. Sec.*, 856 F. App'x 276 (11th Cir. 2021) (applying the liberal construction rule to a *pro se* Social Security appeal).

## IV. Discussion

Mr. Decker argues that the ALJ "failed to properly consider the medical evidence and professional opinions written in [his] Decision Letter [from the VA] dated July 22, 2022, notifying [him] of [his] Entitlement to Individual Unemployability." Doc. 1 at 28; *see also* Doc. 10 ¶¶ 5, 7. Mr. Decker argues that the ALJ failed to consider "testimony during [his] hearing" and "facts when suggesting Flagger as a job." Doc. 10 ¶ 11. Mr. Decker argues that the ALJ "disregarded, ignored, or just failed to read medical evidence that is part of the administrative record" related to his "suicidal ideations as a symptom of [his] PTSD and anxiety disorder." *Id.* ¶ 12. Mr. Decker argues that his diabetes is not controlled and is "exacerbating [his] service connected disabilities." *Id.* ¶ 15. Finally, Mr. Decker

argues that the ALJ did not direct "a single doctor's appointment" related to his benefits claim. *Id.* ¶ 13.

## A. The ALJ's Evaluation of the VA Disability Determination

Pursuant to SSA regulations, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). As to other agency determinations, such as a VA disability determination, the new regulations state that "we will not provide any analysis in our determination or decision about a decision made by any other governmental agency . . . about whether you are disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 404.1504. Moreover, the regulations specify that VA disability ratings constitute evidence that is "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(1). Nevertheless, the regulations require the ALJ to "consider all of the supporting evidence underlying the other governmental agency['s] . . . decision that [the ALJ] receive[s] as evidence in [a plaintiff's] claim." 20 C.F.R. § 404.1504; *see also Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1324 (11th Cir. 2020) (affirming new regulations no longer require analysis of agency determinations, but supporting evidence must be considered).

Mr. Decker argues that the ALJ "failed to properly consider the medical evidence and professional opinions written in [his] Decision Letter [from the VA] dated July 22, 2022, notifying [him] of [his] Entitlement to Individual Unemployability." Doc. 1 at 28; *see also* Doc. 10 ¶¶ 5, 7. Mr. Decker also argues that the ALJ ignored the medical evidence from the VA. *See* Doc. 10 ¶¶ 13–14. The Commissioner argues that "[t]he ALJ properly considered the medical records from the VA in determining" Mr. Decker's residual functional capacity. Doc. 11 at 13.

The VA issued Mr. Decker's rating decision on July 21, 2022. Doc. 10 at 8. The decision states:

1. Entitlement to individual unemployability is granted effective June 13, 2022.
2. Basic eligibility to Dependents' Educational Assistance based on permanent and total disability status is established from June 13, 2022.
3. Evaluation of generalized anxiety disorder, with panic attacks, major depressive disorder, recurrent, moderate, with anxious distress, other specified trauma and stressor related disorder, which is currently 70 percent disabling, is continued.

*Id.* The reasons for decision include: "Entitlement to individual unemployability is granted because you are unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." *Id.* at 9. The evidence cited begins in May 2004 and continues through July 2022. *Id.* In a December 7, 2022 letter, the VA stated that Mr. Decker is "considered to be totally and permanently disabled due solely to [his] service-connected disabilities." R. 202.

9

The ALJ discussed Mr. Decker's mental impairments in her residual functional capacity determination:

> Regarding mental impairments, VA progress notes show that the claimant reported that he was living with his girlfriend and working in landscaping, and endorsed symptoms such as anxiousness, nervousness, agitation, not feeling like himself, poor sleep, constant worry, difficulty "shutting off his brain" at night, poor appetite, and recurrent thoughts of traumatic events related to discovering a body in the woods. Mental status examinations show that he had a one-time finding of fair eye contact, attention, concentration, and recent and remote memory[,] normal speech, cooperative behavior, appropriate grooming, goal directed thought process with no evidence of loose associations or flight of ideas, normal orientation, good intellect, fair to good insight, and appropriate mood and affect. There is no evidence of emergency department visits or inpatient psychiatric care for exacerbation of symptoms.
> . . .
> . . . Regarding his mental impairments, while he alleges disabling symptoms, his mental status examinations are essentially normal without evidence of cognitive or social interacting deficits. Additionally, the undersigned reviewed medical records after the date last insured and there is no evidence of worsening of his mental impairments. In fact, the records shows that the claimant failed to attend several appoint[ment]s, despite his reported disabling symptoms.

R. 23 (internal citations omitted).

The ALJ also discussed Mr. Decker's ratings decisions from the VA:

> The undersigned is mindful Department of Veterans Affairs (VA) service-connected ratings of 90% in February 2022, 70% in June 2022, and 100% in December 2022 and 100% permanently and totally disabled in

December 2022. The disability determination processes utilized by the Department of Veterans Affairs and the Social Security Administration are fundamentally different. Department of Veterans Affairs does not make a function-by-function assessment of an individual's capabilities (i.e., determine the claimant's residual functional capacity) or determine whether the claimant is able to perform either his past relevant work or other work that exists in significant numbers in the national economy as is required by the Regulations. Thus, a disability rating by the Department of Veterans Affairs is of little probative value in these proceedings. Even so, the undersigned did review this evidence, along with all other evidence in the claim, before reaching the conclusions described in this decision.

R. 25–26 (internal citations omitted).

The court is not persuaded by Mr. Decker's argument that the ALJ erred by not properly evaluating his 100% disability rating by the VA. Under the regulations, the ALJ was not required to assign any persuasiveness or provide any analysis of the VA disability rating. *See* 20 C.F.R. §§ 404.1504, 404.1520b(c)(1). Rather, the ALJ was required only to consider the evidence underlying the VA decision. *See id*. To the extent Mr. Decker argues that the ALJ erred by not considering the evidence underlying the decision, the court finds such argument unpersuasive because of the ALJ's comprehensive assessment of all the evidence received in Mr. Decker's claim under 20 C.F.R. § 404.1513, much of which is his treatment at the VA. *See* R. 18–24. Therefore, pursuant to the regulations, the ALJ properly considered the supporting evidence underlying the VA's disability rating decision.

11

### B. The ALJ's Evaluation of Mr. Decker's Subjective Complaints

A claimant's subjective complaints are insufficient to establish a disability. *See* 20 C.F.R. § 404.1529(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a claimant claims disability due to pain or other subjective symptoms. The claimant must show evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. § 404.1529(a), (b); Social Security Ruling 16-3p, 2017 WL 5180304, at *3–*4 (Oct. 25, 2017) ("SSR 16-3p"); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of a claimant's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. § 404.1529(c); *Wilson*, 284 F.3d at 1225–26. In evaluating the extent to which a claimant's symptoms affect his capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of a claimant's symptoms, (3) the claimant's daily activities, (4) precipitating

and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the claimant takes to relieve symptoms, and (8) any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. § 404.1529(c)(3), (4); SSR 16-3p at *4, *7–*8. To discredit a claimant's statements, the ALJ must clearly "articulate explicit and adequate reasons." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

An ALJ's review "must take into account and evaluate the record as a whole." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). There is no rigid requirement that the ALJ specifically refer to every piece of evidence in her decision. *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016). Instead, the ALJ must consider the medical evidence as a whole and not broadly reject the evidence in the record. *Id.*

This determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548–49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom., Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). The Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard. *See Ortega v.*

*Chater*, 933 F. Supp. 1071, 1076 (S.D. Fla. 1996) (holding that the ALJ's failure to articulate adequate reasons for only partially crediting the plaintiff's complaints of pain resulted in reversal). "The question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Mr. Decker makes three arguments regarding the ALJ's determination of his residual functional capacity. *First*, Mr. Decker argues that the ALJ failed to consider "testimony during [his] hearing" and "facts when suggesting Flagger as a job." Doc. 10 ¶ 11. *Second*, Mr. Decker argues that the ALJ "disregarded, ignored, or just failed to read medical evidence that is part of the administrative record" related to his "suicidal ideations as a symptom of [his] PTSD and anxiety disorder." *Id.* ¶ 12. *Third*, Mr. Decker argues that his diabetes is not controlled and is "exacerbating [his] service connected disabilities." *Id.* ¶ 15. The Commissioner argues that the ALJ "considered Plaintiff's condition as a whole in evaluating his subjective symptoms and assessing his [residual functional capacity]." Doc. 11 at 10.

It is clear the ALJ applied the Eleventh Circuit's pain standard. After explaining the pain standard, with citations to 20 C.F.R. § 404.1529 and SSR 16-3p, the ALJ considered Mr. Decker's testimony about his symptoms. *See* R. 21–22. With respect to Mr. Decker's hearing testimony, the ALJ summarized it as follows:

> At the hearing, the claimant stated that he alleged inability to work due to anxiety, depression, panic attacks, sleep disturbance, and difficulty getting to work on time, and that he only feels safe at home. However, he did not provide details as to the limitations caused by his reported symptoms. He also stated that he experiences pain just about every day as long as he can remember, but he did not provide details of the location of his pain and the limitations. He is prescribed antidepressants such as Lexapro that make him feel more of a muted sense of emotions, but he still has some issues, including suicidal ideation. The claimant further stated that he was diagnosed with diabetes a few years ago. He estimated that he can lift about 30 to 40 pounds and stand and walk for about 30 to 40 minutes, otherwise, he is used to laying down several hours during the day. As for daily activities, he stated that he eats breakfast, watches television, and sometimes meets with his kids.

R. 22.

"After careful consideration of the evidence," the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." R. 22; *see* R. 22–24 (chronological discussion of medical evidence). The ALJ then found that Mr. Decker's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 22. The ALJ stated that "[t]he objective medical evidence supports that the claimant has severe impairments of degenerative disc disease status post anterior cervical discectomy and fusion (ACDF), major depressive disorder, generalized anxiety disorder, and posttraumatic stress disorder." R. 22. The ALJ continued: "However,

the evidence does not fully support that the claimant is as limited as alleged. Rather, the evidence supports that the claimant can perform work at a medium exertion within the residual functional capacity given [here]." R. 22.

The ALJ cited medical records from the VA and stated that "the objective medical evidence does not fully support the claimant's allegations of disabling symptoms." R. 23. With respect to physical limitations, the ALJ noted that Mr. Decker "did not mention the location or cause of his pain" or "the limitations caused by his pain." R. 23. Instead, progress notes indicate that Mr. Decker did not report "any symptoms" related to his history of degenerative disc disease with history of anterior cervical discectomy and fusion. R. 23. Instead, Mr. Decker "denied symptoms such as joint or muscle pain, numbness, and weakness, and there is no evidence of treatment for neck pain or other symptoms." R. 23. The ALJ also noted that physical examinations were "essentially normal" and a CT scan showed "mild degenerative changes without high-grade spinal canal or foraminal narrowing and no evidence of hardware loosening." R. 23. Mr. Decker does not cite objective medical evidence, and instead only cites his hearing testimony regarding these physical limitations. *See* Doc. 10 ¶ 11.

With respect to mental impairments, the ALJ acknowledged Mr. Decker's testimony regarding suicidal ideation and also wrote that Mr. Decker's "mental status examinations are essentially normal without evidence of cognitive or social

interacting deficits." R. 23. And, the ALJ "reviewed medical records after the date of last insured and there is no evidence of worsening of his mental impairments. In fact, the records show that the claimant failed to attend several appoint[ment]s, despite his reported disabling symptoms." R. 23. Mr. Decker cites both his hearing testimony and his disability rating decision from the VA to support his position that he experiences suicidal ideations. *See* Doc. 10 ¶ 12. As noted above, the ALJ properly considered the supporting evidence underlying the VA's disability rating decision.

As for Mr. Decker's diabetes, the ALJ acknowledged that he had not met his "glycemic control" goal. R. 23. However, Mr. Decker's diabetes is managed with insulin, and "there is no evidence of his diabetes causing end stage organ failure or . . . significant limitations of basic work activities." R. 23. Mr. Decker argues that as of 2024 his A1C level had increased, but the relevant time period for the ALJ's analysis was the alleged onset date through the date of decision. *See* Doc. 10 ¶ 15. Additionally, Mr. Decker does not point to any objective medical evidence regarding his diabetes and instead cites the ALJ's decision. *See id.*

The ALJ limited Mr. Decker to medium work "considering [his] history of ACDF and mild cervical spine degenerative disc disease, along with [his] reports of being able to lift 30 to 40 pounds consistent with physical examinations." R. 24. The ALJ gave Mr. Decker "the benefit of the doubt regarding his symptoms" related to

mental impairments and included in the residual functional capacity limits on instructions, decision making, pace, and interaction. R. 24.

The ALJ properly evaluated Mr. Decker's symptoms consistent with the Eleventh Circuit's pain standard and her decision was supported by substantial evidence. After discussing Mr. Decker's testimony, R. 22, the ALJ summarized the medical evidence, R. 22–24. The medical evidence cited by the ALJ – generally unremarkable findings, no hospitalizations during the relevant period, and routine and conservative treatment – supports the ALJ's finding that Mr. Decker's allegations of disabling limitations were not fully consistent with the evidence. *See, e.g.*, R. 310 (complaining of anxiety impacting sleep on July 1, 2022); R. 331 (complaining of anxiety and depression and denying suicidal thoughts on June 3, 2022); R. 342 (receiving treatment for diabetes and advised to return to clinic in two months with glucometer and blood glucose log on June 16, 2021); R. 383 (complaining of anxiety and depression and denying suicidal ideation on November 5, 2021); R. 389–90 (attended therapy session for PTSD and anxiety where he denied suicidal ideation on October 20, 2021); R. 398 (reported two inpatient psychiatric hospitalizations in 2009–2011 and "past" suicidal ideation without plan or intent, but denied suicidal ideation "at present" on July 27, 2021); R. 447 (April 12, 2022 CT scan of cervical spine showed "[h]ardware is intact and without evidence for

loosening[] and "[m]ild degenerative changes without high-grade spinal canal or foraminal narrowing[]").

The ALJ acknowledged Mr. Decker's medical history and testimony and accounted for Mr. Decker's subjective complaints when she determined Mr. Decker was limited to medium work with additional limitations. R. 24. Accordingly, there is no error in the ALJ's consideration of Mr. Decker's subjective complaints.

### C. Lack of SSA-Directed Consultative Examination

"An individual claiming . . . benefits must prove that []he is disabled." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The burden is on the claimant to introduce evidence in support of his application for benefits. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The Commissioner is not required to hire an expert medical source when determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1513a(b)(2), 404.1517; *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776 (11th Cir. 2010); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (recognizing that the ALJ is not "obligated to seek independent, additional expert medical testimony" when the record is sufficient to support the ALJ's decision). Instead, "the ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "The court should be guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Id.* at 1423.

Mr. Decker argues that the "SSA has not required a single doctor's appointment." Doc. 10 ¶ 13. The Commissioner argues that "the ALJ was not required to further develop the record." Doc. 11 at 13.

Although Mr. Decker appears to argue that a consultative examination was necessary to develop his residual functional capacity, the ALJ's decision demonstrates otherwise. The ALJ discussed Mr. Decker's VA records since June 2021 as they related to: mental impairments, degenerative disc disease, diabetes, hearing loss and tinnitus, GERD, lipoma, and injuries related to an assault. R. 22–24. The ALJ also discussed the state agency consultants at the initial and reconsideration levels and explained how consistent those opinions were with the evidence of record. R. 25.

Mr. Decker has not identified any evidentiary gaps in the ALJ's decision. Nor has Mr. Decker identified medical records that were not included in the SSA's transcript. The record here was neither incomplete nor inadequate as it related to Mr. Decker's physical and mental impairments. Instead, the record was sufficient for the ALJ to evaluate Mr. Decker's impairments and craft a residual functional capacity that incorporated his abilities. Substantial evidence supports the ALJ's consideration of Mr. Decker's impairments, and Mr. Decker has failed to establish that the ALJ had any obligation to further develop the record.

## V.    Punitive Damages

After his appeal was fully briefed, Mr. Decker filed an Affidavit with the court seeking punitive damages. Doc. 13. The Commissioner responded to the filing. Doc. 14.

It is well-established that the Social Security Act does not confer any right of action for consequential or punitive damages resulting from the denial of disability benefits. *See Ostroff v. State of Fla., Dep't of Health & Rehab. Servs.*, 554 F. Supp. 347, 352 (M.D. Fla. 1983) ("Ostroff now seeks further vindication by suing for consequential and punitive damages. Section 405(g) does not contemplate such an action and affords no such relief."); *Schweiker v. Chilicky*, 487 U.S. 412, 424 (1988) (stating that the Social Security Act "makes no provision for remedies in money damages against officials responsible for unconstitutional conduct that leads to the wrongful denial of benefits"); *Katsoulakis v. Astrue*, No. 10-cv-0081(JFB), 2011 WL 3877080, at *5 (E.D.N.Y. Aug. 31, 2011) ("The Social Security Act does not bestow a private right of action for monetary relief."). Therefore, the court dismisses for lack of subject matter jurisdiction Mr. Decker's claim against the SSA for monetary damages.

## VI.    Conclusion

The ALJ's determination that Mr. Decker is not disabled is supported by substantial evidence. The Commissioner's final decision is therefore affirmed. A separate order will be entered.

**DONE** and **ORDERED** this 7th day of May, 2025.

_____

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE